**In re R.J. MARSHALL, INC., Debtor.**

**R.J. MARSHALL, INC., Plaintiff,**

**v.**

**FREETOWN SAND & GRAVEL, INC., Defendant.**

**Bankruptcy No. 8500156.**
**Adv. No. 850020.**

United States Bankruptcy Court,
D. Rhode Island.

Nov. 19, 1985.

Henry M. Swan, Davis, Jenckes, Kilmarx & Swan, Providence, R.I., for plaintiff-debtor.

Joseph I. Macy, Fall River, Mass., for defendant.

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

Heard on the complaint of the plaintiff-debtor, R.J. Marshall, Inc., to recover alleged contract overpayments made to Freetown Sand & Gravel, Inc., and on Freetown's counter-claim.

Marshall, the general contractor, had entered into a subcontract with Freetown Sand & Gravel, Inc. requiring Freetown to perform all necessary excavating, drain laying, and landscaping work at the Holbrook Elderly & Family Housing Project in Holbrook, Massachusetts.[1] The total price of this subcontract, plus various extra charges, was $83,466.[2]

For reasons that differ widely, depending upon who is telling the story, Freetown failed to complete the contract, Marshall hired other subcontractors to finish or correct Freetown's work, and assessed backcharges against Freetown in the amount of $24,250. Marshall has already paid Freetown $69,494, and now seeks the return of alleged overpayments in the amount of $10,278. This figure represents $93,744 ($69,494 paid, plus backcharges of $24,250), less the contract price of $83,466. Freetown disputes the amount claimed for backcharges, contending that the expenditure of $3,254 should have been sufficient to finish its part of the job, and, conceding that that amount should be deducted from the contract price, counter-claims rather weakly for $9,951, which it asserts is due under the contract.[3] Mainly before us for determination, however, is the proper amount of Marshall backcharges to be allowed against Freetown.

---

1. This opinion constitutes the findings of fact and conclusions of law required by Bankruptcy Rules 7052 and 9014.

2. There is some discrepancy as to the actual contract price. Freetown contends that the contract price, including extras, was $82,700, not $83,466, because one of the extras included in the contract price, $776 to furnish and install six monitor wells (plaintiff's exhibit #2), was not part of the contract. No evidence was presented in support of this allegation, and we accept Marshall's documented claim as to the contract price.

3. See *supra* n. 2.

For the reasons that follow, we conclude that Freetown should be backcharged $13,582, and that the balance owed to Freetown by Marshall is therefore $390.00. Accordingly, R.J. Marshall's complaint for the recovery of $10,278 is denied and Freetown's counter-claim is allowed, but only in the amount of $390.

Plaintiff's exhibits # 3 through # 15 show backcharges for labor and materials costs incurred by Marshall from May 1983 through August 1984. Since the documentary evidence is incomplete and of not much assistance in fact finding, we have been required in making determinations throughout this analysis, to rely subjectively on the apparent credibility and/or first hand knowledge of the witnesses. The plaintiff's only witness, Robert J. Marshall, president of the debtor corporation, did not directly supervise this job, he visited the site only occasionally, and his lack of personal familiarity with things has limited the persuasiveness of his testimony. The defendant also presented but one witness, David Pettey, Freetown's president, and although Pettey was its man-in-charge, it was his brother, Robert, who handled the company's finances, including contract and billing disputes. Robert Pettey did not testify, and David's testimony is weakened by the fact that he was often not involved in, or even aware of, oral or written communications between Marshall and Freetown, concerning Freetown's performance or the progress on the job.

■ With respect to the backcharges shown on plaintiff's exhibits # 3, # 4, # 5, and # 6, (for equipment rental, materials, supplies and manpower) totalling $3,982, it is undisputed that the defendant's equipment was inoperable during much of April 1983, and, to avoid falling behind schedule on the main contract, Marshall was forced to bring in other labor and equipment to finish that part of the contract. As to these items, we conclude that the backcharges are reasonable, and they are allowed in full.

Regarding replacement of "several shingles" damaged by Freetown's backhoe (plaintiff's exhibit # 7), we agree with Freetown that this charge ($102.00) is inflated, and that the amount allowed for this item should not exceed $65.

■ The $2,692 backcharge on plaintiff's exhibit # 8 relates to bituminous road patching and curb repairs. Marshall claims that Freetown did not put "all street and highway connections and repair back to original condition" as required by the contract. Plaintiff's exhibit # 1, note 5. Freetown concedes that cold patch rather than asphalt was used over utility trenches, but asserts that, during a meeting with Marshall's project supervisor, it was agreed that cold patch material was acceptable and that Freetown would not be required to use bituminous road patching. Pettey testified that the asphalt work in question was performed by another subcontractor in October of 1983, while Freetown was still on the job, but that no backcharge issued until February 29, 1984, long after Freetown's November 1983 departure, that being the first notice to Freetown of any backcharge related to asphalt. Robert Marshall did not contradict this part of Pettey's testimony and he could not explain why the backcharge was not issued sooner. Based upon Pettey's testimony, and the limited weight given to Marshall's account because of his lack of first hand knowledge of the problems at issue, the entire backcharge for patching and curb repairs is disallowed.

In plaintiff's exhibit # 9, the charge of $118 for installing twelve nuts and bolts on guard rails is not substantiated. Even Robert Marshall conceded that he could not explain or justify the time allegedly spent on what he agreed was a simple task. The charges in exhibit # 9 are disallowed.

Plaintiff's exhibits # 10 and # 12 are landscape charges totalling $15,526, and constitute the single largest item in dispute. Exhibit # 10, dated May 1984, reflects charges of $9,143 for "fine grading, loaming and seeding." A second backcharge was made on July 1984 (exhibit # 12), in the amount of $6,383 for "additional work for fine grading, loaming, seeding, and leaching field area (clean-up in-

cluded)." Vastly different versions of the events and circumstances underlying these charges were offered.

According to Robert Marshall, his company was forced to pay Dino Growers and Contractors, Inc. $9,143 to landscape a large portion of the site, because of work uncompleted by Freetown. It is undisputed that Freetown did no work after November 1983. Letters to Pettey in April 1984 (plaintiff's exhibits # 22 and # 23) establish that Freetown was notified that another contractor would be hired unless it (Freetown) agreed to finish things as required. Freetown did not reply to these warnings. Plaintiff's photographs (exhibits # 39 through # 46) show large amounts of debris and unfinished landscape work, as of May 24, 1984.

In addition to charges for work not completed, Marshall backcharged Freetown $6,383 for landscaping allegedly required to correct defective work, including replacement of 15 trees and shrubs planted by Freetown which did not survive the winter.

Freetown challenges all the above charges as inflated or otherwise unjustified, and David Pettey testified that in his opinion $3,000 was more than adequate to finish and/or correct the job. According to Pettey, Freetown had allocated $15,000 for the landscape portion of the contract, which was 75 percent complete as of November 1983, when Freetown left the job. With respect to Marshall's photographs showing large areas of unfinished landscape work, Pettey contends that after Freetown seeded the area, Marshall employees and other subcontractors drove vehicles through, or otherwise damaged, seeded areas, ruining work already completed. Pettey says that because of this, Freetown had to re-seed several times, and, after November 1983, did not return to the site because Marshall failed to pay $5,000 for other work previously completed. He conceded, however, that the required clean-up work was not performed by Freetown, and also acknowledged that a number of trees and shrubs planted by Freetown died.

As to this, he testified that Freetown would have replaced damaged or defective shrubbery, had it been informed of the problem and given the opportunity to correct it.

We accept Pettey's testimony that much of the landscape work was completed but subsequently damaged by other workers at the project. Robert Marshall's testimony that Freetown left *all* of this phase in unacceptable condition is rejected. Because Marshall visited the site on very few occasions, he is in no position to refute Freetown's contention that damage was done by workers trudging or driving over loamed and seeded areas.

Neither, however, can we fully accept Pettey's assessment of the minimal expense necessary to finish Freetown's work after its departure. Based on Pettey's own testimony, at least 25 percent of the landscape work was unfinished, and no clean-up was done by Freetown. This was evident in photographs of large boulders and piles of debris still on the site after Freetown's departure. We also reject Pettey's testimony that Freetown was not notified of the dead trees and shrubs. Pettey admitted that he personally observed dead trees, and did not dispute Marshall's claim that there were repeated warnings that unless landscape problems were corrected, a new subcontractor would be hired to finish the work. Plaintiff's exhibits # 22 and # 23. Freetown was not responsive to these documented concerns, and we conclude that Freetown was given adequate opportunity to correct or complete the work before Marshall called in Dino Growers and Contractors, Inc. to finish that part of the job.

■ Based on the entire record, it is our opinion that the amount due Marshall on account of incomplete or substandard landscape work by Freetown is $9,200, which includes a 15 percent charge for overhead and profit (*see infra* p. 203).

With respect to plaintiff's exhibits # 11 and # 15, claiming $1,495 for installation and repair of PVC piping, we accept Pet-

tey's testimony that that item was not Freetown's responsibility. These' claimed backcharges are denied.

The backcharge pertaining to installation of charcoal vents, $335 (exhibit # 13), is allowed. David Pettey conceded that these were an extra which his brother, Robert, had agreed to install (plaintiff's exhibit # 2), but which Freetown did not install.

 On top of everything, Marshall added ten percent to all backcharges, or $2,287, for "general conditions due to delays caused by backcharges." Plaintiff's exhibit # 14. When asked by the Court to explain the basis for this charge, Robert Marshall stated that it was entirely arbitrary, based on Marshall's aggravation, and not on any standard industry practice. In contrast, there is a fifteen percent "handling charge" included in each of Marshall's backcharges which we find to be customary and reasonable in the trade, and which has been factored into the amounts approved in this decision. The additional ten percent "aggravation" charge is disallowed.

Based on all of the foregoing, we conclude that the reasonable value of the labor, services, and materials required to complete Freetown's obligations under its contract with Marshall is as follows:

| | | |
|---|---|---|
| 1. | excavating | $3,982 |
| 2. | shingle repair | 65 |
| 3. | landscaping | 9,200 |
| 4. | charcoal vents | 335 |
| | Total | $13,582 |

These items should be deducted from the contract price of $83,466, leaving an adjusted balance of $69,884. Since Marshall has already paid Freetown $69,494, $390 is due Freetown under the contract. Marshall's claim for alleged overpayments in the amount of $10,278 is denied and Freetown's $9,951 counter-claim is allowed in the amount of $390.

Enter Judgment accordingly.